IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CIES BISKER, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | CIVIL ACTION NO. 2:08-CV-115 (DF) |
| 3M COMPANY, FLOOR*graphics*, INC., | § | |
| NEWS AMERICA MARKETING IN- | § | |
| STORE, LLC, and NEWS AMERICA | § | |
| MARKETING IN-STORE SERVICES, | § | |
| LLC, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Plaintiff's Opening Claim Construction Brief (Dkt. No. 104),

Defendants' Responsive Claim Construction Brief (Dkt. No. 110), and Plaintiff's Claim

Construction Reply Brief (Dkt. No. 119).  Also before the Court are the Local Patent Rule (LPR)

4-3 Joint Claim Construction and Prehearing Statement (Dkt. No. 95) and the LPR 4-5 Joint

Claim Construction Chart (Dkt. No. 95-2).  A claim construction hearing, in accordance with

*Markman v. Westview Instruments*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370

(1996), was held in Texarkana on November 5, 2009.  *See* Dkt. No. 134 (hearing transcript).

After hearing the arguments of counsel and reviewing the relevant pleadings, presentation

materials, other papers, and case law, the Court finds the disputed terms of the patents-in-suit

should be construed as set forth herein.

1

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | BACKGROUND | 3 |
| II. | LEGAL PRINCIPLES | 3 |
| III. | THE PATENT-IN-SUIT: U.S. PATENT NO. 5,863,632 | 4 |
| IV. | CLAIM CONSTRUCTION | |
| a. | "transparent protective coating" | 5 |
| b. | "photographic print" | 11 |
| c. | "graphic print" | 16 |
| d. | "photographic quality" | 17 |
| e. | "said photographic print" | 21 |
| V. | CONCLUSION | 23 |

# I. BACKGROUND

On March 19, 2008, Plaintiff CIES BISKER, LLC ("Plaintiff") initiated this patent infringement lawsuit against 3M Company ("3M"), FLOORgraphics, INC. ("FLOORgraphics"), and News America Marketing In-Store, LLC, and News America Marketing In-Store Services, LLC (together "News America") alleging infringement of U.S. Patent No. 5,863,632 ("the '632 Patent"). The '632 Patent is generally directed to a decorative photographic floor tile comprising an enlarged photographic print to create a visual décor for use in commercial settings. '632 Patent at Abstract.

# II. LEGAL PRINCIPLES

A determination of patent infringement involves two steps. First, the patent claims are construed, and, second, the claims are compared to the allegedly infringing device. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455 (Fed. Cir. 1998) (en banc). The legal principles of claim construction were reexamined by the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). The Federal Circuit in *Phillips* expressly reaffirmed the principles of claim construction as set forth in *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996), *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996), and *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004). Claim construction is a legal question for the courts. *Markman*, 52 F.3d at 979.

The Court, in accordance with the doctrines of claim construction that it has outlined in the past, will construe the claims of the '632 Patent below. *See Pioneer Corp. v. Samsung SKI*

*Co., LTD.*, No. 2:07-CV-170, 2008 WL 4831319 (E.D. Tex. Mar. 10, 2008) (claim-construction

order).  These constructions resolve the parties' disputes over the literal scope of the claims.

### III. THE PATENT-IN-SUIT: U.S. PATENT NO. 5,863,632

The '632 Patent entitled Decorative Photographic Tile and Method Using Same was filed

on January 13, 1995 and subsequently issued on January 26, 1999.   The Abstract of the '632

Patent states:

> A decorative photographic floor tile comprising an enlarged
> photographic print to create a visual decor for use in commercial
> settings. The photographic floor tile comprises a lamination of
> clear vinyl on top of a photographic print with a self-adhesive
> peel-away backing. A method of using the decorative photographic
> floor tile to create a visual decor.

Plaintiff alleges that the Defendants infringe claims 1 – 4, 7, 21 – 24, and 26.  *See* Dkt. No. 85.

Independent claims 1, 4, and 21 are reproduced for reference below with the terms to be

construed in **bold**.

> 1. A method of creating a flooring surface comprising the steps of:
>
> > providing a floor tile comprising an enlarged **photographic
> > print** and a **transparent protective coating** attached to said
> > photographic print, said protective coating **defining a barrier
> > to prevent injury to said photographic print from foot
> > traffic and other objects passing over said floor tile**;
> >
> > affixing said floor tile to a floor to create said flooring surface.

> 4. A floor tile for use as a flooring surface comprising:
>
> > an enlarged **photographic print** having oppositely disposed
> > first and second major faces; and
> >
> > a **transparent protective coating** on said first major face, said
> > protective coating **defining a barrier to prevent injury to
> > said photographic print from foot traffic and other objects
> > passing over said floor tile.**

4

<u>21</u>. A floor tile for use as a flooring surface in a commercial merchandising display comprising:

an enlarged **graphic print** of **photographic quality** having oppositely disposed first and second major faces; and

a transparent protective coating on said first major face **defining a barrier to prevent injury** to **said photographic print from foot traffic and other objects passing over said floor tile.**

## IV. CLAIM CONSTRUCTION

**A.** **"transparent protective coating… defining a barrier to prevent injury to said photographic print from foot traffic and other objects passing over the floor tile"**

a.   *Parties' Positions*

The parties propose the following constructions for "transparent protective coating … defining a barrier to prevent injury to said photographic print from foot traffic and other objects passing over the floor tile," which is present in the independent claims 1, 4, and 21 of the '632 Patent.  The only dispute between the parties appears to be whether construction of the term should include a requirement that the coating be 5 millimeters thick or more.

| Plaintiff | Defendants |
|---|---|
| Plain meaning<br><br>Alternatively, "a layer through which light can pass affording defensive or safeguarding properties … serving as an [sic] defense or barricade." | A clear barrier that has a thickness of about 5 millimeters or more and prevents injury to the photographic print from foot traffic and other objects passing over it.<br><br>Alternatively, INDEFINITE |

Plaintiff argues that a construction is not necessary and that the plain meaning should apply.  Dkt. No. 104 at 19.  Plaintiff offers, in the alternative, a construction that combines

common dictionary definitions for the terms "transparent," "protective," "coating," and "barrier." *Id.* at 20.

Defendants argue that the patentee limited the scope of the claimed protective coating during prosecution to overcome prior art. Dkt. No. 110 at 21. The original language of the claims did not include the present "transparent protective coating" language but required that the floor tiles have a "clear protective coating." These original claims were rejected as obvious over the Muzik patent in combination with the Payne reference. *Id.* The Muzik reference discloses a vinyl protective coating of about 4-5 mils,[1] the same thickness as the "clear protective coating" in a dependent claim of the original application. The patentee subsequently replaced "clear protective coating" with "transparent protective coating" in the claims and changed the claimed thickness from 5 mils to "about 5 millimeters" (approximately 197 mils). Defendants argue that because of the patentee's distinguishing the prior art and the simultaneous amendments, she has surrendered a protective coating of 5 mils from the scope of the claims. Dkt. No. 110 at 23. Defendants add that the claim term would be indefinite without a limitation that the thickness be 5 millimeters or more. A person of ordinary skill in the art would not be able to determine what would qualify as a protective coating within the scope of the patent – other than the 5 millimeters disclosed in the preferred embodiment, Defendants argue. *Id.*

Plaintiff replies that limiting the thickness of the protective coating to 5 millimeters during prosecution was a mistake. Dkt. No. 119 at 5. Plaintiff cites to a declaration of the inventor, Darcy Bisker, which states that a coating of 5 millimeters would be unsafe and would defeat the purpose of the invention. *Id.* Plaintiff also references that the preferred embodiment describes

---

[1] One "mil" is equal to one one-thousandth of an inch. As a reference, most plastic credit and debit cards are 30 mils (or 0.03 inches) thick.

the use of *Lustex 5* brand overlaminate, which is 5 mils thick.  According to Plaintiff, "this shows that one of ordinary skill in the area of art would have understood that the preferred coating was close to 5 **mils** – not 5 **millimeters** because such person would be familiar with 'Lustex 5[.]'" *Id.* (emphasis in original).

   b. *Court's Construction*

  The dispute between the parties regarding this term's construction is whether the patentee has disclaimed a protective coating of less than 5 millimeters.  Defendants submit that prosecution disclaimer works to limit the scope of the claim.  Plaintiff submits that claim differentiation and mistake support its construction.

  The patent specifically enumerates the thickness of the protective coating in two places: in the Description of the Preferred Embodiment ("The clear vinyl layer 2 is a durable five millimeter thick vinyl." '632 Patent col.3 ll.32-33) and in claim 6 ("The floor tile of claim 5, wherein said protective coating has a thickness of about 5 millimeters.").  These two instances alone do not support a narrowing the scope of the asserted claims.

  First, the statement from the Description of the Preferred Embodiment is just that, a description of a preferred embodiment, and cannot, alone, serve to impart a restriction of claim scope.  1*Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").  Simply, the Court will not import a limitation from the preferred embodiment into the claims.

  Second, the doctrine of claim differentiation precludes construing the term to include a thickness of "about 5 millimeters." The doctrine of claim differentiation refers to the rebuttable

presumption that limitations found within the dependent claims should not be read into the associated independent claim. *Karlin Tech, Inc. v. Surgical Dynamics Inc.,* 177 F.3d 968 (Fed. Cir. 1999). That is, there is a rebuttable presumption that different claims have different scopes. *Curtis-Wright Flow Control Corp. v. Velan Inc.*, 438 F.3d 1374 (Fed. Cir. 2006). Defendants correctly point out, however, that their proposed construction would not be coextensive with claim 6 to the extent that the coating is thicker than "about 5 millimeters." Dkt. No. 110 at n.9.

Finding no support in the claims or the specification for Defendant's limtiation, the Court proceeds to an analysis of the prosecution history where, Defendants argue, the patentee expressly disclaimed a coating of 5 mils. Although the prosecution history is relevant to claim construction, the prosecution history may not be used to infer a narrowing of a claim absent the applicant's clear and unmistakable disavowal of claim scope. *Omega Eng'g Inc. v. Raytek* Corp., 334 F.3d 1314, 1326 (Fed. Cir. 2003); *Amgen Inc. v. Hoechst Marion Roussel Inc.*, 314 F.3d 1313, 1327 (Fed. Cir. 2003). The question, then, is whether the statements relied upon by Defendants constitute a clear and unmistakable disavowal of claim scope.

The original claims of the '632 Patent application were rejected by the PTO as being obvious under 35 U.S.C. §103 in light of the Payne, Travis, and Muzik references. Dkt. No. 110-5 at 3-4. According to the examiner:

> [I]t would have been obvious to one of ordinary skill in the art motivated by the desire to produce a photographic floor tile to use a protective coating from Muzik and enlarge the photographic print from the teaching of Travis in Payne in order to achieve desirable printing results depending in [sic] the intended use.

*Id.* at 4.  In response, the patentee explained that the Muzik reference disclosed a "laminate for

mounting a photographic print" and that "the photograph is backed by a flat mounting base[.]"

Dkt. No. 110-6 at 11.  The patentee further distinguished her invention from the Muzik reference:

> Muzik primarily teaches a particular method of laminating a
> photograph or graphic print for purposes of displaying such a print.
> Furthermore, Muzik simply discloses the possibility of mounting a
> laminated print on a horizontal surface such as a table or floor.
> However, there is no suggestion that the horizontally-mounted
> photograph could be used as a floor tile or that it could be used as a
> flooring surface.  In fact, Muzik teaches away from such a use.  If
> one were to use the foam board mounting base 15 as described in
> column 3, lines 35-45, and mount the photograph would be [sic]
> crushed by foot traffic and the photograph would be injured.  In
> addition, there is no disclosure or suggestion to provide a protective
> coating as [a] barrier to prevent injury to the photographic print
> from foot traffic.  The only protection disclosed for the transparent
> sheet is from skin oils resulting from handling (See column 4, lines
> 35-37).

By this, Defendants argue, the patentee surrendered any and all claim scope encompassing

protective coating of about 5 mils or less because a person of ordinary skill in the art would not

know what would qualify as a "transparent protective coating."  Dkt. No. 110 at 23.

On balance, Defendants' prosecution disclaimer argument fails.  The claim language at

issue does not speak to a specific thickness, and the patentee's comments distinguishing the prior

art do not constitute a clear and unmistakable disavowal of claim scope.  First, the patentee

distinguished multiple differences between its invention and the Muzik reference including

characterizations that the Muzik reference teaches away from and is inconsistent with the claimed

invention.  *See Gart v. Logitech, Inc*., 254 F.3d 1334, 1342 (Fed. Cir. 2001) (refusing to limit

claim because, while the patentee distinguished his preferred embodiment from the prior art on

the basis of a claimed feature, patentee also noted that those same references did not contain all of

the features of the invention or were incompatible with the elements needed for the claimed invention).

Furthermore, Defendant has not shown that the PTO examiner rejected the claims based on the thickness of the coating. This weighs against a finding that a clear disavowal or restriction was made. *Nystrom v. Trex Co.*, 424 F.3d 1136,  1147-1148 (Fed. Cir. 2005) ("The examiner eventually allowed claims 1-14 and 18 because the 'prior art fail[ed] to teach both sides of the board with a curved configuration,' not because the invented board specified a particular radius of curvature ratio.").

Defendants argue, in the alternative, that if the claims of the '632 Patent are not limited to a protective layer about 5 millimeters or more, then the claim becomes insolubly ambiguous and therefore indefinite.  Dkt. No. 110 at 24.  A claim is indefinite under §112 ¶2 if it is insolubly ambiguous and no narrowing construction can properly be adopted.  *Amgen Inc., v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1342 (Fed. Cir. 2003).  If one skilled in the art would understand the bounds of the claim in light of the specification and other intrinsic evidence, then the claim does not fail for indefiniteness.  *Morton Int'l Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1470 (Fed. Cir. 1993).  To put it another way, the question is whether a person of ordinary skill in the art reviewing the intrinsic record would understand what constitutes a transparent protective coating within the scope of the patent.

In this case, a person of ordinary skill at the time would recognize the functionality of the claim's transparent protective coating is not dependent on a specific thickness, but whether it protects the print from foot traffic or the like.

10

In sum, Defendants have not demonstrated that the patentee limited the scope of the transparent protective coating to require that the coating be 5 millimeters or more.  Instead, the claim term itself requires that the coating – whatever its thickness – be sufficient to protect the photographic from injury caused by foot traffic or the like.  Thus, the Court construes the term "transparent protective coating… defining a barrier to prevent injury to said photographic print from foot traffic and other objects passing over the floor tile" to mean "a transparent barrier of sufficient thickness to protect the photographic print from injury that would otherwise be caused by foot traffic and other objects passing over it."

**B.     "photographic print"**

a.  *Parties' Positions*

The parties propose the following constructions for "photographic print," which is present in claims 1 – 4 of the '632 Patent.  The primary dispute between the parties is whether the claim term should include images generated through ink printing.

| Plaintiff | Defendants |
|---|---|
| Plain meaning<br><br>Alternatively, "a reproduction resembling a photograph" | An enlarged positive image on light-sensitive material made from a film negative or plate and that is not made using ink printing |

Plaintiff again argues that the ordinary meaning sufficiently defines "photographic print." Again, though, Plaintiff submits that a combination of the dictionary definitions for "photographic" and "print" would be appropriate should the Court feel a construction is warranted.  Dkt. No. 104 at 25-26.

Defendants' main argument is that their construction most accurately reflects "the patentee's characterization of her invention as involving traditionally developed images and her dismissal of ink printing." Dkt. No. 110 at 15. Defendants contend that the patent expressly defines "photographic printing" to exclude ink printing. *Id.* at 16. Defendants cite multiple portions of the specification to support their position that the patentee intended a "clear distinction" between photographic printing and ink printing:

> Also, large format ink prints have been used to make large scale posters. However, ink printing is very expensive and is usually only cost-efficient where very high volumes are involved. Furthermore, ink printing does not provide the high quality images which can be achieved through photography. As a result, photographic printing is far superior to ink printing where low volume and high quality products are desired. '632 Patent at col.1, ll.43-50.

> Because of its lower quality images and higher cost, ink printed images are not a viable alternative for the photographic tiles of the present invention. The photographic tiles of the present invention are typically used where a low volume of tiles is desired and a very high quality print is desired. As a result, tiles using ink printed images would be prohibitively expensive and of an inferior quality. *Id.* at col.2, ll.1-7.

Defendants claim that these statements represent clear expressions of manifest exclusion or restriction that disavow ink printing. Dkt. No. 110 at 17 (citing *Teleflex v. Ficosa North America Corp.*, 299 F.3d 1313, 1328 (Fed. Cir. 2002)).

      b.   *Court's Construction*

Plaintiff argues that these statements provide "background" of the prior art or "are nothing more than general statements about advantages over the prior art, which is insufficient as a matter of law to create a disavowal of claim scope." Dkt. No. 104 at 28-29. To the contrary, the

patentee's statements about the potential role of ink printing clearly and unmistakably disclaim ink printing as a means to generate images.

First, Plaintiff contends that the embodiments in the specification should not limit broader claim language. Dkt. No. 104 at 28. While this Court generally agrees, the limiting statements were made in the Background of the Invention and the Summary of the Invention portions of the specification, not in the Description of the Preferred Embodiment. A statement's location is not determinative, but the location can signal the likelihood that the statement will support a limiting definition of a claim term. Statements that describe the invention as a whole, rather than statements that describe only preferred embodiments, are more likely to support a limiting definition of a claim term. *See C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 864 (Fed. Cir. 2004) (finding that the description of the claimed "plug" in the summary of the invention section globally required a pleated surface); *see also*, *SciMed Lifesystems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1343 (Fed. Cir. 2001) (concluding that characterization of one structure as part of the "present invention" is strong evidence against reading the claims to encompass the opposite structure).

Second, Plaintiff points to a statement in the specification as evidence that the patentee intended no disavowal. The statement that "the photographs used in the photographic tiles can be created using conventional or digital photography" demonstrates that the patentee did not disclaim ink printing, Plaintiff argues. This language, however, must be read in context with the rest of the specification. In the same portion of the specification, the patentee disparages the ink printed images as "not a viable alternative for the photographic tiles of the present invention."

This latter phrase – significantly clearer than the former – specifically distinguishes ink printing and effectively informs the public that ink printing is not within the scope of the invention.

Third, Plaintiff cites to cases like *Ventana Med. Sys. v. Biogenex Labs., Inc.*, 473 F.3d 1173, 1181-82 (Fed. Cir. 2006) and *Northern Telecom Ltd. v. Samsung Elec. Co.,* 215 F.3d 1281 (Fed. Cir. 2000) as support for its position that the '632 Patent's statements about ink printing do not constitute disavowals.   However, *Ventana*, *Northern Telecom* and similar cases are readily distinguishable from the instant case.

In *Ventana*, for example, the patents-in-suit were generally directed to automated staining devices for use in immunohistology.  Biogenex argued that the patentee had disclaimed all kinds of methods for dispensing reagent onto a sample except for a specific kind of dispensing called "direct dispensing."  *Ventana,* 473 F.3d at 1180.  The "BACKGROUND ART" section of the patent-in-suit's specification stated that "[t]he previously known devices are limited in their performance and unable to satisfy the needs for automated, high precision immunohistology" and that it was an object of the invention to "provide a device which provides more rapid, reliable and more reproducible results than standard methods."  *Id*.  The Federal Circuit did not interpret these "general statements" by the inventors to act as a disclaimer for all types of dispensing except "direct dispensing."  *Id*.  It found that the "BACKGROUND ART" section discussed a number of different prior art devices that employed a number of different dispensing techniques, including a device that used a "direct dispensing" technique.  *Id.*  The Federal Circuit stated that "if BioGenex's argument were correct, the inventors have also disavowed coverage of 'direct dispensing,' which is the type of dispensing employed by the patent's preferred embodiment."  *Id*. In the present case, the patentee statements do not generally describe ink printing or its

14

disadvantages.  To the contrary, ink printing is described as "prohibitively expensive" and "not a viable alternative."

*Northern Telecom* is similarly unavailing.  In that case, Samsung argued that the patentee's statement that "the RF power should be sufficiently low as not to damage the photoresist through ion bombardment" operated to completely exclude ion bombardment as an etching mechanism.  *Northern Telecom*, 215 F.3d at1293.  The Federal Circuit rejected Samsung's argument.  *Id*. ("By suggesting – in connection with a description of the preferred parameters for the claimed 'plasma etching' process – that steps 'should' be taken to reduce or avoid ion bombardment, the patentees fall far short of excluding ion bombardment altogether.").  In this case, Plaintiff argues that the "statement regarding ink printing explicitly recognizes other types of printing, including ink printing, can be used, and expresses a preference for high quality/low cost methods such as photo printing."  Dkt. No. 104 at 30.  The '632 Patent, however, goes further than merely expressing preferences or describing advantages over the prior art.  It completely excludes "ink printing" as a viable alternative for generating the images.

Fourth, Plaintiff argues that patentee was explaining that, at the time of the patent, it was not commercially feasible to use ink printing, and thus, the best mode of practicing the invention was to use photographic printing.  Dkt. No. 119 at 3; *see also* Dkt. No. 134 at 39 (hearing transcript).  Therefore, statements about the state of ink printing should not serve as "a ban on all after-arising technology," Plaintiff argues.  *Id*.  This argument also lacks merit.  This is not a case where the patent broadly described a category, like printing, that included several methods or processes wherein one generally-known-but-infrequently-used method evolved to predominate.

*See, e.g.*, *SuperGuide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870 (Fed. Cir. 2004) (holding that the term "regularly received television signal" in a patent from 1985 was not limited to analog signals, but also included digital signals, which were also known by skilled artisans at the time). Nor is this a case where the patentee claimed a "conventional," "traditional," or "standard" process such that subsequent technological advancements changed the scope of what was considered conventional, *i.e.* conventional printing processes. *See, e.g.*, *Kopykake Enters., Inc. v. Lucks Co.*, 264 F.3d 1377 (Fed. Cir. 2001) (holding that "conventional printing processes" of foodstuffs did not include ink jet printing at the time of the patent even though thousands of ink jet printers were sold around the time of the patent). Rather, in this case, the patentee expressly recognized a form of printing and characterized it as "prohibitively expensive" and "not a viable alternative for the photographic tiles of the present invention."

In sum, Defendants have met their burden of demonstrating that the patentee has surrendered ink printing. Defendant's proposed construction, however, is too narrow. Therefore, the Court construes the term "photographic print" to mean "a print created by conventional photographic processes rather than by ink printing."[2]

## C.   "graphic print"

### a.   *Parties' Positions*

The parties propose similar constructions for "graphic print" as they do for the term "photographic print." "Graphic print" is present in claim 21 of the '632 Patent. Again, the primary dispute is whether the claim term should include images generated through ink printing.

---

[2] The Court finds that the term "image" is too broad, and the parties do not dispute the construction of "print" but rather what constitutes a "photographic print" within the scope of the patent.

16

| Plaintiff | Defendants |
|---|---|
| Plain meaning<br><br>Alternatively, "a reproduction relating to a written or pictorial representation, or other display generated by a computer or an imaging device" | An enlarged positive image on light-sensitive material of a graphic made from a film negative or plate and that is not made using ink printing. |

Plaintiff's construction is based on the dictionary definitions of both "graphic" and "print." Dkt. No. 104 at 30-31. Both parties offer the same arguments for their respective proposed constructions for "graphic print" as they offered for "photographic print." *See, e.g.*, Dkt. No. 104 at 30; Dkt. No. 110 at 15 (the "constructions [of 'photographic print' and 'graphic print'] depend equally upon the same portions of the intrinsic record.").

      b.    *Court's Construction*

Claim 21 of the '632 Patent states:

> 21. A floor tile for use as a flooring surface in a commercial merchandising display comprising:
>
> > an enlarged **graphic print** of photographic quality having oppositely disposed first and second major faces; and
> >
> > a transparent protective coating on said first major face defining a barrier to prevent injury to said photographic print from foot traffic and other objects passing over said floor tile.

There is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims. *Tandon Corp. v. United States Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987); *see also, Nystrom v. Trex Company, Inc.*, 424 F.3d 1136,1143 (Fed. Cir. 2005) (citing *Tandon*). However, different terms in separate claims may be construed to cover the same subject matter where the written description and prosecution history indicate that

such a reading is proper. *Tandon*, 831 F.2d at 1023-1024. This is one of those cases. The parties do not articulate a substantive difference between "graphic print" and "photographic print," and the Court cannot discern any distinction after consideration of the claim language. Furthermore, the remaining intrinsic evidence indicates that a parallel construction is appropriate. Finally, as previously discussed, the evidence demonstrates that patentee has surrendered ink printing. *See supra* Part (B)(b).

Therefore, the Court construes the term "graphic print" to mean "a print of a graphic created by conventional photographic processes rather than by ink printing."

**D.   "photographic quality"**

a.   *Parties' Positions*

As with the preceding terms, Plaintiff contends that the "photographic quality" does not require construction but offers a construction nonetheless. "Photographic quality" is found only in the text of claim 21. The parties' main dispute is whether the claim term is indefinite.

| Plaintiff | Defendants |
|---|---|
| (Having the) accuracy or representation sufficient to resemble a photograph | Indefinite |

Plaintiff argues that claim 21 sufficiently provides the public with notice of what is required of the "enlarged graphic" print. Dkt. No. 104 at 31. Plaintiff argues that "photographic quality" is a common term such that a person of ordinary skill in the art would understand its meaning. *Id*. at 32. As support, Plaintiff cites to Defendant 3M's patents and advertising materials using the same term. *Id*. at 32-33.

Defendants argue that "photographic quality" lacks an "objective anchor." Dkt. No. 110 at 25. That is, Defendants contend that "photographic quality" must fail because it relies too heavily on subjective opinion and that the intrinsic evidence does not provide an objective standard for "photographic quality." *Id*. at 27. For support, Defendants cite to the deposition testimony of one of Plaintiff's founders, Ed Cies, and attempt to correlate "photographic quality" to other indefinite terms like "aesthetically pleasing." *Id*. at 25-26.

In reply, Plaintiff argues that Mr. Cies is not one of ordinary skill in the art and that even though the term "photographic quality" could mean different things to different people, it is not indefinite. Dkt. 119 at 10-11.

   b.  *Court's Construction*

The test for indefiniteness is whether a person of ordinary skill in the art would understand all of the language in the claims – that is, understand what is claimed – when they are read in light of the specification. *Morton Int'l Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1470 (Fed. Cir. 1993); *see also, Young v. Lumenis, Inc.*, 492 F.3d 1336, 1346 (Fed. Cir. 2007). If the skilled artisan would understand the bounds of the claim when read in light of the specification, then the claim satisfies the definiteness requirement of 35 U.S.C. §112 ¶2. The definiteness requirement does not mandate absolute clarity. The proper inquiry is whether the terms can be given any reasonable meaning, and a difficult issue of claim construction does not automatically require a finding of indefiniteness. *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). A finding of indefiniteness requires showing by clear and convincing evidence that the patent does not meet the statutory requirements and is thus invalid. *Budde v. Harley-*

*Davidson, Inc.*, 250 F.3d 1369, 1376 (Fed. Cir. 2001).  In determining whether a claim term fails for indefiniteness, general principles of claim construction apply.  *Young*, 492 F.3d at 1346.

In this case, Defendants argue that a person of ordinary skill in the art would not understand the meaning of "photographic quality."  For support, Defendants cite to *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342 (Fed. Cir. 2005).  In *Datamize,* the Federal Circuit affirmed the district court's finding of invalidity based on indefiniteness of the phrase "aesthetically pleasing" because none of the evidence provided any meaningful definition for the phrase.  *Datamize*, 417 F.3d at 1349-1350.   The *Datamize* panel examined the intrinsic and extrinsic evidence for some objective standard with which to "anchor" the subjectivity of the term "aesthetically pleasing."  *Id*. at 1351-1355.  After a similar examination of the relevant evidence, this Court finds that, unlike "aesthetically appealing," the phrase "photographic quality" is sufficiently defined so as to meet the requirements of §112 ¶2.

Defendants – who bear a heavy burden to demonstrate ;9795;9795indefiniteness – have failed to demonstrate that a person of ordinary skill in the art could not discern a meaningfully precise scope of "photographic quality."  Defendants argue that "no portion of the intrinsic evidence … provides an 'objective anchor.'"  Dkt. No. 110 at 27.  This argument does not withstand a thorough examination of the claims and specification.

The claim language uses "photographic quality" in independent claim 21 to describe the "graphic print."  The subsequent dependent claims describe the print as being able to create a "substantially full-size, full scale simulation" of a retail product or a "photographic simulation" of an object, floor covering, or ground terrain.  '632 Patent c.6 ll. 34, 41, 43-45.  Additionally, the specification repeatedly provides other situations where the claimed inventions may be used.  For

example, the specification discusses using the images to "create a simulated décor." *Id*. at c.2

l.17.  The specification describes the images used in conjunction with the invention using words

like of "simulation," "illusion," and life-sized décor.  For example:

> [P]hotographic floor tiles with life size photographs of naturally
> occurring objects such as sand, water, leaves, foliage, rock, or
> marble can be used to a create a <u>simulation</u> of those articles without
> actually having to use the articles themselves in the setting. A life
> size photographic floor tile of a sidewalk, rocky path, or a stream or
> pond, or the like can be used appropriately. Similarly, a beach or
> water setting could be <u>simulated</u> using the photographic floor tiles.
> Also, a marble floor could be <u>simulated</u> using photographic tiles
> made from a photograph of a marble floor. In this manner the
> photographic tiles <u>create the illusion</u> that the photographed item is
> actually present.

*Id*. at c.2 ll.18-29 (emphasis added).  Thus, even though the specification does not contain the

phrase "photographic quality," it is within these situations that the boundaries of "photographic

quality" are defined such that a person of ordinary skill would understand the scope of the

asserted claims.  A skilled artisan would understand that the graphic prints must be of sufficient

quality to be able to "create the illusion" or simulate an environment or terrain, such as a marble

façade.  That is, regardless of size, the images must be of sufficient resolution, clarity, and

accuracy to do so.  Thus, a person of ordinary skill would know that the patent recognized the

image quality generally associated with a photograph as integral to the purported invention.

Additionally, Defendants' argument that even Mr. Cies and Ms. Bisker cannot agree on

"photographic quality" lacks merit.  *Bancorp Services, L.L.C. v. Hartford Life Ins. Co.,* 359 F.3d

1367, 1371 (Fed. Cir. 2004) ("[I]f the meaning of the claim is discernible, 'even though the task

may be formidable and the conclusion may be one over which reasonable persons will disagree,

we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds.'")

(quoting *Exxon Research and Eng'g*, 265 F.3d at 1375).

In sum, the term "photographic quality" is not insolubly ambiguous so as to render it indefinite. A print or image may be of photographic quality if its resolution, clarity, and accuracy allow it to simulate or create the illusion – at least in two dimensions – of specific objects and things. Generally, a photograph accurately reflects its subject's attributes such as color, shape, or size. A photograph can be distinguished from other media on the basis of clarity and resolution as well. In light of the foregoing, the Court construes "photographic quality" to mean "having the qualitative properties – for example resolution, clarity, and accuracy – of a photograph."

## E.   "said photographic print"

a.   *Parties' Positions*

The dispute over this term is whether "said photographic print" is indefinite for failure to have a proper antecedent basis. The term is found in claim 21 of the '632 Patent. Neither party proposes a construction for the term.

Plaintiff argues that the claim term is easily construed with reference to the rest of the claim language and that there is no risk of confusion to the public. Dkt. No. 104 at 36. Plaintiff also objects to the inclusion of the term as beyond the scope of claim construction. Dkt. No. 122-2 at 9.

Defendants respond that the phrase "photographic print" does not occur in claim 21 prior to its recitation in "said photographic print," which means that "said photographic print" lacks an antecedent basis. Dkt. No 110 at 33.

b.      *Court's Construction*

As an initial matter, a determination of claim indefiniteness is a legal conclusion that

arises from a court's performance of its duties as the construer of patent claims.  *See, e.g.*, *Default*

*Proof Credit Systems, Inc. v. Home Depot U.S.A. (d/b/a/ The Home Depot),* 412 F.3d 1291, 1298

(Fed. Cir. 2005).  Defendants concede that an antecedent basis can be determined by implication.

Dkt. No. 110 at 33 (citing *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370

(Fed. Cir. 2006)).  Different words are presumed to have different meanings; however, as

previously discussed, different terms may be construed to cover the same subject matter where

the intrinsic evidence indicates that such a reading is proper.  *See supra* Part (C)(b).

In this case, the claim 21 states:

> 21. A floor tile for use as a flooring surface in a commercial
> merchandising display comprising:
>
> > an enlarged graphic print of photographic quality having
> > oppositely disposed first and second major faces; and
> >
> > a transparent protective coating on said first major face defining
> > a barrier to prevent injury to **said photographic print** from foot
> > traffic and other objects passing over said floor tile.

Claims are considered indefinite when they are insolubly ambiguous or not amenable to

construction, and the definiteness of a term hinges on whether it can be given any reasonable

meaning.  *Young*, 492 F.3d at 1336 (quoting *Datamize*).  In claim 21, "said photographic print" is

used in conjunction with the previously construed term "graphic print."  The question, then, is

whether "graphic print" of the claim serves as a proper antecedent basis for "photographic print."

The Court finds that it does.  The term "said photographic print" is, therefore, not insolubly

ambiguous.  Further, based on the construction of "graphic print" as well as the remaining

intrinsic record, "said photographic print" sufficiently delineates the scope of the invention such that the public is adequately notified, and Defendants have not met their burden to show otherwise.   In sum, the Court concludes that the term "said photographic print" is not indefinite.

## VI. CONCLUSION

The Court hereby **ORDERS** the claim terms addressed herein construed as indicated.  The parties are further **ORDERED** that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual constructions adopted by the Court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the constructions adopted by the Court.

**SIGNED this 25th day of November, 2009.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE